UNITED STATES of America, Plaintiff,

v.

FOURTEEN THOUSAND EIGHT HUN-
DRED AND SEVENTY–SIX PIECES
OF PUERTO RICO LOTTERY TICK-
ETS, Defendant,

Rufino Velez Rivera, Intervenor.

Civ. 90–2438(JP).

United States District Court,
D. Puerto Rico.

May 21, 1992.

José F. Blanco, Asst. U.S. Atty., Hato
Rey, P.R., for plaintiff.

Ulpiano F. Crespo, Hato Rey, P.R., for
defendant.

## OPINION & ORDER

PIERAS, District Judge.

The Court has before it cross-motions for
summary judgment filed by plaintiff the
United States of America and intervenor
Rufino Vélez. For the reasons set forth
below, plaintiff's motion is hereby GRANT-
ED and intervenor's motion is hereby DE-
NIED.

### I. Background

The facts of this case are not in dispute.
On November 11, 1988, Mr. Rufino Vélez
Rivera, travelling from St. Maarten in the
Netherlands Antilles, arrived at Luis Mu-
ñoz Marin International Airport in Car-
olina, Puerto Rico, carrying approximately
14,876 Puerto Rico lottery tickets. He
presented to the appropriate officials a
Customs Declaration Card, which stated
that he was carrying monetary instruments
in excess of $10,000.00, and told the offi-
cials that he was carrying prized lottery
tickets that had been given to him as pay-
ment of a debt. The officials seized the
lottery tickets pursuant to 19 U.S.C.
§ 1305(a), which provides, in pertinent part:

> All persons are prohibited from im-
> porting into the United States from
> any foreign country ... any lottery
> ticket, or any printed paper that may
> be used as a lottery ticket, or any
> advertisement of any lottery. No such
> articles whether imported separately

or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the appropriate customs officer that the ... prohibited articles contained in the package were enclosed therein without the knowledge or consent of the importer, owner, agent or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture....

19 U.S.C. § 1305(a), 46 Stat. 688 (1930), as amended. Mr. Vélez requested that the tickets be returned so that he might obtain the prize but his request was denied.[1] The Government filed a Complaint for Forfeiture in Rem on October 29, 1990, seeking a declaration that the tickets be condemned and delivered to the possession of the United States Marshal for destruction. Mr. Vélez filed a Petition for Intervention on December 30, 1990, which was allowed by the Court on December 20, 1990.[2] The parties filed their cross-motions for summary judgment on August 13, 1991.

II. Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir.1948). Essentially, Rule 56(c) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ In his motion for summary judgment, the intervenor contends (i) that Section 1305 and its criminal counterparts, 18 U.S.C. §§ 1301 and 1302,[3] refer to paper or tickets dependent upon the *future* event of a lottery; (ii) that the essential elements of a "lottery" are consideration, prize, and

---

1. After the tickets were seized, an argument ensued between Vélez and Customs officials, as a result of which Vélez was charged under 18 U.S.C. §§ 111, 114 and 115(a), (b)(4) with assault and battery of a federal official. On December 14, 1988, he plead guilty to the assault charge under Section 111. Vélez was not charged, however, under 18 U.S.C. § 1301, 62 Stat. 762 (1948), which provides:

   Whoever brings into the United States for the purpose of disposing of the same, or knowingly deposits with any express company or other common carrier for carriage, or carried in interstate or foreign commerce any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; or knowingly takes or receives such paper, certificate instrument, advertisement, or list so bought, deposited, or transported, shall be fined not more than $1,000 or imprisoned for not more than two years, or both.

2. Mr. Vélez also filed a civil suit in the courts of Puerto Rico seeking to a declaration that he was the official winner of the lottery, as provided for by the Puerto Rico Lottery Law. 15 L.P.R.A. § 120. The Court has been informed that these proceedings have been stayed pending resolution of this action.

3. The text of 18 U.S.C. § 1301 is set forth above at note 2. 18 U.S.C. § 1302, 62 Stat. 762 (1948), as amended, provides, in pertinent part:

   Whoever knowingly deposits in the mail, or sends or delivers by mail:

   ... Any lottery ticket or part thereof, or paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance ...

   ... Shall be fined not more than $1,000 or imprisoned not more than two years, or both....

chance,[4] and (iii) that under Puerto Rico law prized lottery tickets are considered documents of value which are property of the holder or bearer and payable upon presentation (*accord* 15 L.P.R.A. § 122). Based on these contentions, he argues that the paper seized from him could not be "lottery tickets" since they were prized tickets—documents of set value, without chance or consideration. He requests that the tickets be returned to him or that, in the alternative, he be declared the winner of the lottery.

In its motion, the government contends (i) that Section 1305 authorizes the seizure of "any lottery tickets," making no distinction between prized or non-prized tickets and (ii) that the tickets constitute an "advertisement" of a lottery, which is also subject to seizure.[5] The government therefore argues that the seizure was proper under the statute and that the tickets should be forfeited and destroyed.

The memoranda in support of the parties' motions, neither of which is more than six pages long, contain almost no case law and no discussion of the legislative history or purpose of Section 1305 or relevant canons of statutory interpretation. The lack of discussion of any case law or legislative history is not the fault of the parties, however. After an independent review of the case law and legislative history supporting that portion of Section 1305 dealing with lotteries, the Court has found no direction as to its scope or purpose. The Court has identified, however, and relies upon, several relevant, established principles of statutory interpretation.

A fundamental canon of statutory interpretation commonly known as the "plain meaning rule" holds that "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916) (citations omitted). The relevant statute in this case, 19 U.S.C. § 1305, prohibits the importation of "*any* lottery ticket" into the United States. Since the statute broadly limits the importation of *any* lottery ticket, and does not distinguish between prized and non-prized tickets, the Court begins with the proposition, relied upon by the Government, that the statute encompasses *all* lottery tickets, including those brought into the country by the intervenor.

■ A party who questions the application of the plain meaning rule to an act or a provision of an act must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purposes of the act, or that the act considered in conjunction with other similar acts or with its legislative history imports a different meaning. 2A Singer, *Sutherland Statutory Construction* § 46.01 at 82 (5th ed. 1992) (citations omitted). In this case, the intervenor suggests that 19 U.S.C. § 1305 should be considered in conjunction with 18 U.S.C. §§ 1301 and 1302. To be successful in making an argument of this type, a party must show that these statutes are *in para materia*—that they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. If such a showing is made, the articulated purposes of one act can influence the interpretation of the other.

The intervenor endeavors to make such an argument in this case because federal criminal statutes concerning lotteries, including 18 U.S.C. §§ 1301 and 1302, have

---

**4.** *See* Black's Law Dictionary at 1097 (rev'd 4th ed. 1968); *United States v. 83 Cases of Merchandise Labeled "Honest John"*, 29 F.Supp. 912 (D.Md.1939); *see also* 33 L.P.R.A. § 1211 ("A lottery is any scheme for the disposal or distribution of money or property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest in such money or property,

upon any agreement, understanding, or expectation that it is to be disposed of by lot or chance, whether called a lottery, raffle, or gift enterprize, or by whatever name the same may be known.")

**5.** The government has not offered any explanation of this latter contention, which the Court need not consider.

been narrowly construed to apply to tickets or other items dependent on the future event of a lottery. *See, e.g., France v. United States,* 164 U.S. 676, 682, 17 S.Ct. 219, 221–22, 41 L.Ed. 595 (1897) (statute prohibiting carrying across state lines any paper representing a ticket or interest "dependent upon the event of a lottery" is "highly penal, rendering its violator liable to fine and imprisonment" and therefore must be strictly construed to apply "only to that kind of paper which depends upon a lottery the drawing of which has not yet taken place."); *United States v. Halseth,* 342 U.S. 277, 280, 72 S.Ct. 275, 277, 96 L.Ed. 308 (1952) (predecessor to 18 U.S.C. § 1301 strictly construed so that "the words 'concerning any lottery' mean an existing, going lottery or gambling scheme.");[6] *United States v. Rich,* 90 F.Supp. 624 (D.C.Ill.1950) (18 U.S.C. § 1302 must be strictly construed and its reach must be limited 'within its meaning as so construed). The obvious flaw in the intervenor's argument is that these criminal statutes have purposes entirely distinct from that of 19 U.S.C. § 1305—a civil forfeiture statute. As a result, they cannot be viewed as being *in para materia* with 19 U.S.C. § 1305 and the narrow construction applied to 18 U.S.C. §§ 1301 and 1302, like that applied to all criminal statutes (*see United States v. Margiotta,* 688 F.2d 108, 120 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983) (citation omitted) (recognizing "the time honored tenet of statutory construction that ambiguous laws which impose penal sanctions are to be strictly construed against the Government")), cannot be carried over to 19 U.S.C. § 1305. Instead, being more akin to statutes whose purpose is to promote the general welfare, 19 U.S.C. § 1305 must be construed liberally. 3A Singer, *supra,* § 71.01 at 515. As a result, the intervenor's attempt to limit the application of the plain meaning rule based on the purposes of 18 U.S.C. §§ 1301 and 1302 must fail.

Since the intervenor has not endeavored to mount an attack against application of the plain meaning rule by reference to the legislative history of 19 U.S.C. § 1305, the Court finds no reason to limit the plain meaning of the statute—which the Court finds prohibits the importation into the United States of *all* lottery tickets, including those that are prized and those that are non-prized. Finally, since the intervenor has failed to bring to the Court's attention, and the Court has failed to find, any authority under which it might declare the winner of a Puerto Rico lottery, the Court will not do so. Plaintiff's motion is therefore GRANTED and intervenor's motion is DENIED.

IT IS SO ORDERED.

---

**6.** This narrow interpretation of the criminal statute, prohibiting the transportation only of tickets dependent upon the future event of a lottery, which interpretation is applied to the present version of 18 U.S.C. § 1301, explains why the intervenor was not, and could not have been, charged with any criminal violation.